412

Raymond SAULNIER

v.

UNITED STATES.

No. 471-54.

United States Court of Claims.

Jan. 20, 1960.

Max C. Louis, Washington, D. C., for plaintiff. W. Saxton Seward, Brown & Seward, New York City, Samuel L. Davidson, Richard G. Kline, Cushman, Darby & Cushman, Michael Gould, and Surrey, Karasik, Gould & Efron, Washington, D. C., were on the briefs.

Francis H. Fassett, New York City, with whom was George Cochran Doub, Asst. Atty. Gen., for defendant. Albert K. Geer, Washington, D. C., was on the brief.

WHITAKER, Judge.

Plaintiff, a citizen of France, sues for an alleged infringement of United States Letters Patent No. 2,125,752 issued to him on August 2, 1938, entitled "Removal Roof for the cockpits of aircraft." The patent is on a canopy or roof over the top of the cockpit, which has the quality of being slid back and forth, while the plane is on the ground or in the air to permit ordinary egress and ingress, and the intake or shutting out of the air, and one which also has the quality of being completely and instantly disengaged from the aircraft by pulling a handle in the cockpit, when the pilot wishes to "bail out" in an emergency.

The evidence clearly shows that the defendant infringed the patent in suit, and, since the trial commissioner has so found, and the parties have not excepted to these findings, we find this as a fact without further discussion.

The sole remaining question is its validity, the amount of compensation, if any, for the infringement having been deferred for later determination. The trial commissioner found that it was invalid because anticipated by the prior art. He found that all the elements of plaintiff's patent were old and that plaintiff's combination of them to produce the result obtained was obvious to anyone skilled in the art. The case is not free from doubt, but, taking everything into consideration, we think the combination was not obvious.

We start with the fact that the result obtained by plaintiff had been sought ever since they started putting canopies over the cockpits of fighter planes, without success. This, of itself, would seem to refute the statement that the combination of these old elements was obvious to anyone skilled in the art. It is true, now that we look at the facts in retrospect, that plaintiff's invention seems simple enough. But it is equally true that the mere fact that the patented idea was simple, does not prove that it

was invalid. We are concerned here, only, with whether plaintiff's claim was novel in the sense that the word is used in patent law.

As stated, the combination which plaintiff invented was a canopy or roof over a cockpit that was both slidable back and forth and also was completely detachable when desired by means of an instant release mechanism located within the cockpit. Of course the two mechanisms, one for sliding the roof back and forth and the other for completely detaching the roof, did not act conjointly. When one result was desired, one mechanism was used, and when another result was desired, another mechanism was used. The two did not operate at the same time. But no one had invented a canopy that was both susceptible of being slid back and forth and also of being completely detached when desired. Plaintiff invented such a canopy—something no one else had been able to do.

Prior to plaintiff's patent there had been patents granted on canopies which the pilot could completely detach from the aircraft, that would fly off, when desired, as in the Hicks patent relied on by the defendant; but the Hicks patent did not slide back and forth, for normal entry and exit. Also, there had been slidable roofs or canopies, to permit normal entry and exit, as in the Sutton patent, also relied on by defendant, but this roof and canopy could not be completely disengaged. It is true Sutton claimed that his roof could be slid completely out of the way, "whereby his egress from the airplane is not hazardous." This may or may not have been so; but the roof was still there, adjacent to the cockpit the pilot wished to leave in a hurry, his plane riddled with machinegun bullets, perhaps, and on fire, and it provided many "catching-places" for the strap of a parachute or the pilot's clothing. Also, this device was not instantaneous. After the emergency occurred, the pilot was still forced to open the canopy in order to get out. In plaintiff's device the pilot need only to pull the releasing mechanism and the roof was instantly blown completely away, leaving nothing, in the way of a roof, to interfere with the pilot's escape.

It is significant that the defendant adopted plaintiff's device instead of Sutton's.

The Joyce patent calls for a windshield that was slidable back and forth. This, too, is but one part of plaintiff's invention, but the commissioner says the hold-down clamps of, not the Joyce, but the Hicks patent, which was releasable but not slidable, might have been used to instantaneously detach the cockpit cover. Unfortunately, for defendant, Joyce did not do so, nor did anyone else until plaintiff came along. The same may rightfully be said of the Hathorn patent.

A number of other patents are mentioned in Finding 16, but these, obviously, do not anticipate plaintiff's patent.

The British patent to Petters, et al., has the same vice, or worse, as the Sutton patent. In it the roof is slidable back and forth and, in case of an emergency, it can be opened in the middle and each part folded back beyond the cockpit. But the two sides are still attached to the airplane, and what the wind would do to them, flapping them back and forth, is horrible to contemplate. It may be, as the commissioner suggests, that the wind would tear these two halves off the airplane. This seems to us uncertain, but, if it would, would it do it immediately, before the pilot attempted to escape from the cockpit? Maybe so; maybe not. But in plaintiff's device the pilot, by merely pulling a cord released the means that held the canopy in place, so that there was nothing to keep the slip stream from blowing it away instantaneously.

As much as we respect the opinion of our learned and able commissioner we cannot agree with him that this patent anticipates plaintiff's patent. Plaintiff's patent is a decided improvement over this British patent, an improvement that might make the difference between life and death to the pilot seeking to escape. In plaintiff's device there is no possibility of the canopy's interfering with the

pilot's escape, because the whole thing is immediately blown away.

The British Boulton patent has the same vice as the Sutton patent: the roof is not detachable from the airplane, but remains attached to it at all times.

We agree with the commissioner that the evidence is insufficient to show that the Lockheed Sirius airplane, built for Colonel Charles A. Lindberg, or the Curtiss-Wright Design 75, or the Douglas Aircraft Type O–46A anticipate plaintiff's patent.

■ There is no question that a combination of old elements to produce a new and useful result is patentable. We discussed this in Badowski v. United States, 140 F.Supp. 544, 135 Ct.Cl. 93, 102, et seq., citing cases in support thereof. We refer to what we said there.

A canopy that would slide back and forth, even in flight, was old; a detachable canopy was old. But a canopy that was both slidable back and forth and completely and instantaneously detachable was new. There can be no doubt that such a canopy was useful. Defendant's long continued use of it, to the exclusion of all others, is eloquent testimony of that fact.

■■ We think it is not amiss to say that France has paid plaintiff for the use by the United States of his invention in certain aircraft canopies procured by the United States prior to September 2, 1945. This was done under the Blum-Byrnes Agreements between the United States and France, under which each government undertook to compensate its own citizens for claims against the foreign government. It also might be said that the British Government has purchased from plaintiff a license to use his invention on its aircraft.

Further, at the time of plaintiff's application in the United States Patent Office prior art was cited to show that plaintiff's claim 1 was unpatentable. After argument, however, and an amendment to state that the slidable canopy was "capable of being operated when in flight," the claim was allowed and a patent was granted. The burden is on the infringer to show that the patent was improvidently granted. It is presumed to be valid. We do not think defendant has carried that burden.

We approve the findings of the trial commissioner as to the patent claims infringed by the several types of aircraft used by the defendant, to wit, the Thunderbolt, the Thunderjet, the Mustang, the Scorpion, the Fury, and the Sky Raider. We have adopted these findings as the findings of the court.

Counsel for the parties have agreed that during the accounting phase of this case, plaintiff shall have the right to present evidence as to other aircraft cockpit canopy constructions embodying structures allegedly falling within the scope of any claim held valid and infringed; and that defendant shall have not less than ninety (90) days' notice of any and all such structures upon which plaintiff intends to rely in said accounting proceedings before being required to present evidence on the further issue of infringement thus tendered for trial for the first time during the accounting phase of this case. Plaintiff notified defendant by a letter dated October 24, 1957, that claims 1 and 6 of the Saulnier patent are also charged to be infringed by constructions identified as follows:

| | |
|---|---|
| ANO1–85FGA–2 | Model F9F–2 |
| ANO1–85FG–2 | Model F9F–4, –5, –5P |
| ANO1–85FGD–2 | Model F9F –6, –6P, –7, –8 |
| ANO1–245FBA–2 | Model F2H–1 |
| ANO1–245FBB–2 | Model F2H–2, F2H–2N |
| ANO1–245FBB–2A | Model F2H–2, –2P |
| ANO1–245FCA–2 | Model F2H–1N |

No evidence was presented at the initial trial of this case as to the construction of the above-identified aircraft.

Plaintiff is entitled to recover and judgment will be entered to that effect. The case is remanded to the trial commissioner, pursuant to Rule 38(c), 28 U.S.C.A. to determine reasonable and entire compensation for defendant's unlicensed use of plaintiff's patented invention.

BARKSDALE, District Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.